IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-456-FL

| | | |
|---|---|---|
| ALLECIA HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| FRENCH/WEST/VAUGHAN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion to dismiss counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(3) and (6). (DE 7). The issues raised are ripe for ruling. For the following reasons the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action August 7, 2024, relying on a charge of discrimination filed with the Equal Opportunity Employment Commission and its right to sue letter. She alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., and wrongful discharge in violation of the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2, et seq. Plaintiff seeks economic, non-economic, and punitive damages, costs, and attorneys' fees.

Defendant answered, raising counterclaims for breach of contract, defamation, and defamation per se October 8, 2024.[1] Defendant relies upon a Nondisclosure and Restrictive

---

[1] Defendant refiled its answer and counterclaims October 29, 2024, correcting deficiency in labeling attached exhibits. (DE 10). All references to the answer and counterclaims in citations herein are to this refiled document and attached exhibits.

Covenant Agreement (the "Agreement") and an employee handbook executed by plaintiff, as well as articles of organization and a limited liability company annual report for Southstar Creative LLC ("Southstar"). Defendant seeks compensatory and punitive damages, costs, and injunctive relief.

Plaintiff filed the instant motion to dismiss counterclaims October 29, 2024, asserting improper venue and failure to state a claim. Defendant responded in opposition November 19, 2024.

## STATEMENT OF FACTS

The facts alleged by defendant in support of its counterclaims can be summarized as follows. Defendant is a marketing firm that offers public relations, advertising, and digital media services. (Countercl. (DE 10) ¶ 5). Plaintiff began working as a creative project manager for defendant on or around September 12, 2023. (Id. ¶ 8). At the outset of her employment, plaintiff entered into the Agreement with defendant. (Id. at ¶ 9; DE 10-2). The Agreement states, in relevant part, that "[t]he parties agree that any litigation arising out of or involving this contract shall take place in Wake County, North Carolina, in the courts of the State of North Carolina, and [plaintiff] hereby submits [her]self to the personal jurisdiction and venue of the state courts for Wake County." (Agreement (DE 10-2) ¶ 11).

The Agreement also has a non-compete clause, prohibiting plaintiff from competing for defendant's customers by "engag[ing] in lines of business, any of which . . . are the same, similar, or related to any products, services or other benefits offered or provided by [defendant], or the same, similar or related to, any of the business, or lines of business, done by [defendant]." (Id. ¶ 5(c)(i)). The Agreement's non-compete clause applies for one year following the termination of plaintiff's employment without geographic limitations. (Id. ¶ 5(b)). The

2

Agreement also has clauses requiring plaintiff to "devote [her] entire time and best efforts to advancing the interests of [defendant]" and prohibiting her from doing "anything that would inure to the benefit of any person who competes or might compete with [defendant]" during plaintiff's employment. (Id. ¶ 1).

Defendant alleges numerous problems with plaintiff's job performance, including attendance and communication issues, which defendant believed "stemmed from [plaintiff's] fundamental misunderstanding of [defendant's] work." (Countercl. ¶¶ 20-42). Defendant allegedly terminated plaintiff's employment February 20, 2024, due to her performance not meeting defendant's expectations for the role. (Id. ¶ 43).

One day after plaintiff's termination, defendant became aware of an anonymous post on Glass Door, a job posting website. (Id. ¶ 45). Defendant attributes this anonymous post to plaintiff. (Id. ¶ 50). The post gave defendant a "one-star" rating, referred to defendant as a "TOXIC ZONE," and stated "Professionals of Color DO NOT APPLY!!" (Id. ¶¶ 45, 47). The remainder of the post mirrors the allegations made by plaintiff in her complaint in the present action. (Id. ¶ 50; see, e.g., Compl. (DE 1) ¶¶ 17-26). In relevant part, the post states:

> Purchased accolades aside. This is not the place for you if you value art, true creativity, and professional excellence. [Defendant] is not a safe space if you are a person of Afro, Caribbean or LatinX descent. Over a 6 month period, I managed to perform well while overcoming daily exposure to textbook DEI micro/macro aggressions. 3 instances of public humiliation from a co-worker, and a trainer. When brought to the attention of other leadership and [defendant's] part-time HR Rep, I was told this was "normal behavior", and that this particular employee is just…well…..just a character." After that, the same employee went so far as to draw on a shared dry erase board..an inappropriate rendition of a topless curvy woman, with ethnic hairstyle, in a grass skirt, with over-exaggerated naked breasts. The artwork that included 2 arrows labeled "Coconuts" and "BahamaMama" displayed a disgusting lack of professionalism and overt cultural bias.
>
> After taking photos for proof, and articulating the need for incident resolution during on an [sic] "Informal/formal" 6 month performance review form, I was

3

"Let Go" 2 weeks later.  In that meeting, I was told for the first time by the same trainer that she now felt I was "incapable of managing the workload" despite great review from other department leads, no previous warning, or proof of any infractions in writing……Textbook. Discrimination. [sic].

(Id. ¶ 48).

Defendant alleges plaintiff formed Southstar June 25, 2021, and has operated it since the termination of her employment with defendant.  (Id. ¶ 63).  Southstar currently maintains a website advertising "design specialists with projects that range from digital design to fine art." (Id. ¶ 67).  On August 5, 2024, defendant's counsel informed plaintiff's counsel that plaintiff was in violation of the Agreement because Southstar was in direct competition with defendant.  (Id. ¶ 70).

## COURT'S DISCUSSION

A.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the [moving party]," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[2]

---

[2]    Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

B.  Analysis

Plaintiff moves to dismiss defendant's breach of contract counterclaim for improper venue and failure to state a claim, and to dismiss defendant's defamation and defamation per se counterclaims for failure to state a claim. The court addresses these counterclaims in turn.

1.  Breach of Contract

a.  Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a complaint for "improper venue" before pleading an answer. "Rule 12(b)(3) [is] not [a] proper mechanism[] to enforce a forum-selection clause." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 61 (2013). This is because "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." Id. at 55. This rule "clarifie[s] that a party may not seek to enforce a forum selection clause by moving to dismiss for improper venue." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 (4th Cir. 2018).[3]

Here, plaintiff's sole argument in support of dismissal for improper venue is the forum selection clause contained in the Agreement. Pursuant to Atlantic Marine and BAE Sys., plaintiff's motion to dismiss under Rule 12(b)(3) is denied, and the court evaluates plaintiff's remaining arguments in accordance with Rule 12(b)(6).

b.  Rule 12(b)(6)

In North Carolina, the "necessary allegations for a breach of contract claim [are]: 1) the existence of a contract between plaintiff and defendant, 2) the specific provisions breached, 3)

---

[3] "Instead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atlantic Marine, 571 U.S. at 60.

5

the facts constituting the breach, and 4) the amount of damages resulting to plaintiff from such breach." Intersal, Inc. v. Hamilton, 373 N.C. 89, 108-09 (2019). "North Carolina courts will enforce a covenant not to compete if it is: 1) in writing; 2) reasonable as to the terms, time, and territory; 3) made part of the employment contract; 4) based on valuable consideration; and 5) not against public policy." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 267 (2019). "The party seeking enforcement of a restrictive covenant has the burden of proving its reasonableness," and "[t]he reasonableness of a non-competition covenant is a matter of law for the court to decide." Id. "In the absence of an express geographic territory restriction, a court can enforce a restriction prohibiting a former employee from soliciting customers or clients." Id. However, "covenants prohibiting competition for a former employer's customers are only enforceable when they prohibit the employee from contacting customers with whom the employee actually had contact during his former employment." Id. at 269.

Defendant alleges plaintiff breached the Agreement by operating Southstar during and after her employment with defendant. According to the Agreement, plaintiff "shall not during the term of employment provide personal services, whether or not compensated, to any other business or enterprise." (DE 10-2 ¶ 1). Additionally,

> [f]or a period of one year after the effective date of termination of [plaintiff's] employment with [defendant] . . . [plaintiff] shall not, directly or indirectly, alone or in association with, or through, or for others, . . . compete with [defendant] for, or with regard to, any clients or customers of [defendant] . . . . During said one year period, the foregoing sentence means (among other things, and by way of illustration and not limitation) not only that [plaintiff] shall totally refrain from soliciting the opportunity, either for himself or other persons, to provide to clients or customers of [defendant] any products, services or other benefits in [defendant's] line or lines of business, but also that [plaintiff] shall totally refrain from providing, directly or indirectly, to clients or customers of [defendant] any products, services or other benefits in [defendant's] line or lines of business, even if clients or customers of [defendant] come to [plaintiff] without his solicitation or prior communication to them . . . .

6

(Id. ¶ 5(b)).

Defendant does not allege facts giving rise to a plausible inference of breach of the Agreement. Although defendant alleges plaintiff formed Southstar in 2021, (Countercl. ¶ 63; DE 10-4 at 1-2), which was prior to plaintiff's employment with defendant, defendant does not allege any facts regarding plaintiff's provision of services to Southstar or any other business during plaintiff's employment with defendant. (See id. ¶¶ 20-43).

In addition, while plaintiff allegedly operates Southstar currently to provide services that are "the same or substantially similar to those [services] offered by [defendant]," (Countercl. ¶ 67), defendant does not allege that plaintiff has solicited or provided services to any of defendant's clients or customers. (See id. ¶¶ 62-72). By its terms, the Agreement prohibits competition "for, or with regard to, any clients or customers of [defendant]." (DE 10-2 ¶ 5(b)) (emphasis added). Thus, even if plaintiff owns and operates Southstar as defendant alleges, defendant has not alleged sufficient facts to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Accordingly, defendant's breach of contract counterclaim is dismissed for failure to state a claim pursuant to Rule 12(b)(6).[4]

2. Defamation and Defamation Per Se

To state a claim of defamation, defendant must plead sufficient facts to "show that [plaintiff] 1) caused injury to [defendant] 2) by making false, defamatory statements 3) of or concerning [defendant] 4) that were published to a third person." Bouvier v. Porter, 386 N.C. 1, 10, (2024). "[I]n order to be actionable as defamation a statement must be one of fact, not merely opinion." Desmond v. News & Observer Publ'g Co., 375 N.C. 21, 38 (2020). "A false statement concerning a corporation, which is, by its very nature, incapable of mental suffering or

---

[4] Because the court determines defendant has not pleaded sufficient facts to state a claim, the court does not address plaintiff's further argument that the Agreement is unenforceable under North Carolina law.

loss of social relationships, is not actionable unless the immediate tendency of the publication is to impair plaintiff's reputation in its business relationships, or actual pecuniary loss is alleged and proved." R.H. Bouligny, Inc. v. United Steelworkers of Am., 270 N.C 160, 169 (1967).

"Generally, a communication is deemed defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Cannon v. Peck, 26 F.4th 547, 559 (4th Cir. 2022). The court must consider the full context of the statement, viewing the words "within the four corners" of the publication and interpreting them "as ordinary people would understand" them. Renwick v. News & Observer Publ'g Co., 310 N.C. 312, 317, 319 (1984). North Carolina recognizes three categories of defamation: "1) publications obviously defamatory which are called [defamation] per se; 2) publications susceptible of two interpretations one of which is defamatory and the other not; and 3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed [defamation] per quod." Renwick, 310 N.C. at 316 (emphasis in original). The law presumes damages from publications which are defamatory per se, but damages must be alleged and proved for publications which are defamatory per quod. Id.

Defamation per se includes any publication which 1) "charges that a person has committed an infamous crime," 2) "charges a person with having an infectious disease," 3) "tends to impeach a person in that person's trade or profession," or 4) "otherwise tends to subject one to ridicule, contempt or disgrace." Renwick, 310 N.C. at 317. To impeach a person in his trade or profession, "the false words 1) must touch the plaintiff in his special trade or occupation, and 2) must contain an imputation necessarily hurtful in its effect on his business." Badame v. Lampke, 242 N.C. 755, 757 (1955). "Defamation of this class ordinarily includes charges made

8

by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business." Id. The publication need not "involve an imputation of crime, moral turpitude or immoral conduct." Renwick, 310 N.C. at 317. But to be defamation per se, the defamatory words must be "susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party." Flake v. Greensboro News Co., 212 N.C. 780, 786 (N.C.1938).

Here, defendant alleges plaintiff falsely represented that she reported the drawing and her concerns about it to management, (Countercl. ¶¶ 52-53), that she had a six-month review (id. ¶ 54), and that her pre-termination performance reviews were all positive, (Id. ¶¶ 57-58). These are statements of fact, not opinion, and are therefore actionable. Desmond, 375 N.C. at 38.[5] Although these statements concern defendant's internal employment relationship with a former employee, they do not touch on defendant's "special trade or occupation," marketing and advertising. Badme, 242 N.C. at 757. Additionally, considering their full context and viewing them as ordinary people would understand them, these statements are not "of such nature that the court can presume as a matter of law that they tend to disgrace and degrade" defendant. Flake, 212 N.C. at 786. Thus, defendant fails to state a claim for defamation per se on this basis, and plaintiff's motion to dismiss is granted as to the defamation per se counterclaim.

By contrast, defendant has stated a claim for defamation per quod. Although plaintiff's alleged false statements are "not obviously defamatory," they may become so "when considered with innuendo, colloquium, and explanatory circumstances." Renwick, 310 N.C. at 316. Therefore, defendant's allegations in support of its counterclaim permit a plausible inference that plaintiff's statements "lower [defendant] in the estimation of the community or . . . deter third

---

[5] Defendant also alleges that plaintiff falsely accused defendant of a "disgusting lack of professionalism," "overt cultural bias," and "textbook discrimination." (Countercl. (DE 10) ¶ 59). However, these accusations are not actionable because they are opinion, not fact. Desmond, 375 N.C. at 38.

9

persons from associating or dealing with [it]." Cannon, 36 F.4th at 559. Plaintiff argues defendant fails to state a claim for defamation per quod due to a failure to allege pecuniary loss. (Pl.'s Mot. Dismiss (DE 8) at 8 n.2). However, the counterclaim expressly states that plaintiff's post was "disruptive to [defendant's] operations," (Countercl. ¶ 60), and "[a]s a direct and proximate result of [plaintiff's] defamatory statements, [defendant] has suffered damages in excess of $25,000," (id. ¶ 97). Accordingly, defendant has alleged pecuniary loss. Plaintiff raises no other grounds for dismissal of the defamation per quod counterclaim. Therefore, plaintiff's motion to dismiss is denied in this part.

## CONCLUSION

Based on the foregoing, plaintiff's motion to dismiss (DE 7) is GRANTED IN PART and DENIED IN PART. Defendant's counterclaims for breach of contract and defamation per se are DISMISSED for failure to state a claim upon which relief can be granted. Defendant's counterclaim for defamation per quod is allowed to proceed.

SO ORDERED, this the 12th day of March, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge